Good morning, Your Honors. Stephen Babcock, I'm the Assistant Federal Defender for Montana in the Billings Division. I represent the Appellant, Ms. Vander Rickey Sandcrane. Mr. Sandcrane was sentenced to a 360-month, 30-year mandatory minimum sentence pursuant to 18 U.S.C. 2241C. Mr. Sandcrane is a Native American. He is a registered member of the Northern Cheyenne Tribe in Montana. He pled guilty to the crime of aggravated sexual abuse against him. That crime occurred on September 22nd of 2007. It was 57 days after Congress amended the mandatory minimum pursuant to this type of crime via the Adam Walsh Act on July 27th of 2006. So 57 days afterwards, he ends up committing this horrendous crime. We're not disputing that. He ends up being sentenced to 30 years. His guideline range at that time was 135 to 168 months. So a whopping... Counsel, you have an uphill battle because you have the criminal statute and then you have antelope. Correct. And I don't think we can find any intent to discriminate in either of those acts or the statute on the decision. And if you can't find that, it seems to me that it's very difficult for you to find error in this decision. It's difficult. It certainly is. And I'm conceding that. You're talking specifically about my equal protection claim. Of course, in Washington v. Davis, the Supreme Court says that disparate impact is not enough. I don't think that the government would dispute the fact that Mr. Sandcrane is subject to this type of penalty, certainly more often because of his status as a Native American. And the Supreme Court, in Antelope, in deciding that Native American is not a suspect class, almost agreed with that particular position. They have classified it as a political entity. Well, respectfully, I disagree with that, is that being a Native American is a political entity. As I stated in my brief, I think political entities are based upon whether or not you're Republican, Democrat, Libertarian. I do not see how it comes into effect if you're a Native American. The Tenth Circuit in United States v. Parenthis, which is a case decided well after Antelope, decided that there was still a two-part test in determining whether or not an individual was a Native American. One is whether or not they're tried to tribal affiliation. The other one is whether or not they have Indian blood. If you're talking about Indian blood to determine jurisdiction for prosecution, how is that not race? So I disagree with that, but I do not think this entire equal protection argument hinges upon Antelope. I think you can take a look at other Supreme Court precedents, specifically way back to the days of Yore and Yickel v. Hopkins, when they talked about the invidious discrimination against Chinese laundromat owners. Certainly in that case, as in this case, and I certainly will concede that the law in and of itself is facially neutral, but you can also take a look at the desperate impact and also the inevitable... Which the law in Yickel was not. Correct. So, I mean, assuming we get to that point in your argument, how do you make an equal protection argument based on a facially neutral law? In the invidious application, as was done in Yickel, which is still there. Well, I don't quite understand. I mean, these are... The federal government does not generally enforce common law-type crimes. Correct. Theft, rape, even murder. They have to be sort of interstate. You know what the body of criminal law is. Correct, as far as, like, a hand on fence. Unless you're in a federal enclave. Correct. And federal enclaves tend to be predominantly Indian reservations. Correct. I mean, we have Navy bases, too. Correct. You know, the Presidio used to be an enclave. I guess it's not anymore. But those are the two big areas, Indian reservations and military bases, with Indian reservations being, or Indian country being by far the biggest. So... We can add our national parks to it. Well, that's true, although those are highly unpopulated, so in terms of the number of crimes that happen there. So I'm just sort of puzzling this out. So domestic crimes are going to happen where people live, which would be Indian reservations and perhaps military bases. And as a consequence, these kinds of general applicability would tend to apply to Indians more often just because they tend to live on Indian reservations. Correct. How do you get an equal protection violation from that? I think you get into the point, Izzo, that because it is facially neutral, as the Court has pointed out, if you take a look at what happened in Heco v. Hopkins, it was also officially neutral in that case, but it's because it's applied so invidiously. And if you take a look at Washington v. Davis, and the Court is talking about, of course, there's no discriminatory purpose here. That is an argument from the government. But if you take a look at the concurring opinion in Washington v. Davis, specifically stated by Justice Stevens, as though that the bright line would be for disparate impact, disparate motive, is not so bright line. I mean, you have to believe as though that Congress had the foreseeability when enacting a criminal sentence enhancement up to 30 years of who it's going to affect. Playing everybody will concede, it affects Native Americans to a much higher degree. So I think you can get into how the law is applied in order to get this strict scrutiny analysis. But that calls into question all criminal, federal criminal law in Indian country. I think it would call this. No, every single one of them. Because every single crime that's applicable to the federal enclaves will far more often be applied to Indians than to anybody else. Well, that's the nature of the beast. The land under federal jurisdiction for which local or common law crimes are applied, these two entities, putting aside national parks, which are sparsely populated, are military bases and Indian reservations. So anything that applies to the federal enclaves will apply to Indians vastly disproportionately more than to, whether it's speeding or whether it is shoplifting, whether it is manslaughter, whether it is any crime at all. That's correct, but not any crime at all. Why isn't the entire Assimilative Crimes Act then a huge human protection violation? Well, I think you have to take a look at whether or not there was. . . Major Crimes Act and the Assimilative Crimes Act put together. I think you have to take a look at what is the impact of it. This particular crime enhances a sentence that had a guideline range of 135 to 168 months. It created a mandatory minimum, 360 months. I'm not arguing that the entire Major Crimes Act needs to be thrown out. I'm arguing that this crime. . . I thought your rationale would apply with equal force to the entire Major Crimes Act. Well, it could. It could if there was an individual that was put in Mr. Sandcrain's position that was discriminated at this level. Yes. If I could move on to my second argument. And my second argument is also that the enactment of this enhancement is in violation of the Eighth Amendment's ban against cruel and unusual punishment. The jurisprudence on the Eighth Amendment is quite interesting to say the least. There is certainly not a bright line rule. The Supreme Court in Rummel and Sollum and Harmeline, down the road to Ewing v. California, has adopted different standards, certainly in my opinion. This Court has engaged into different type of analysis on cruel and unusual punishment claims. If you take a look at the first original threshold is whether or not the sentence imposed in this case is grossly disproportionate. That comes from the Harmeline decision. What comes from the Harmeline decision also is that it's supposed to be fact-specific and that the contours of deciding what equals grossly disproportionate is completely unclear. So if you take a look at the way the Supreme Court took a look at this issue in Ewing v. California, they take a look at the individual, their criminal history. In essence, they almost go into a 35-53 factor, which is completely thrown out the window with this 30-year mandatory minimum. And they almost take a look at the characteristics of the defendant. Well, the characteristics in the defendant in this case is he has zero criminal history, he has zero adult history, zero juvenile history, zero tribal history. We've had evaluations done on him by two experts, one that talked in great length about his abusive and chaotic childhood, gone through six different foster care families, substance abuse issues. We have him evaluated by a psychosexual evaluator who would put him as a low-risk sex offender, somebody that could be treated in the community and in hopes that the person's lack of age, only being 19, his lack of criminal history, and his lack of criminal sexual conduct in the past would come into play. Certainly not the case. So if we take a look at the crime, the crime is a serious crime. I'm certainly not disputing that. But if you take a look at a 30-year mandatory minimum, I do believe that it meets the threshold of grossly disportionate. If you take a look at what this case, this court did in Bharara v. Arvalos, excuse me for butchering that, a 2004 case, they said as though that fine and dandy, it's within the guidelines. Well, now we live in a world where the guidelines are not mandatory. But if you take a look at it, we have a whopping 225-month difference from the low end of the guidelines complied to the 360-month mandatory limit. So after we meet that analysis, you then can get into an intra-jurisdictional analysis as called on by Harmeline. You get to a position of murder used to be considered the worst crime in America. I don't think so anymore. If you have second-degree murder, Mr. Sangprem would have received at the low end of the guidelines 16 years less than the crime that he committed in this case. So I think if you take a look at an intra-jurisdictional analysis, you can get to a point where you can go on. What was Hutto v. Davis? Excuse me? What do you do with Hutto v. Davis? Hutto v. Davis is a case that, of course, has a serious crime in it. Hutto v. Davis is a pre-Harmeline decision. Yours is a serious crime, too. Your client's crime. It is. And I'm not saying that it isn't. It just made a judgment that it was more serious than they had thought it to be before. Yeah. Apparently that they had made that decision. But in making that decision, I don't think they took a look at the factors of Mr. Sangprem with zero criminal history in the life that he had come, along with his expert evaluations. I may have the last three minutes to hear about it. Okay. Thank you. Laurie Suk for the government. We believe that both issues raised by this appeal are controlled by a United States Supreme Court precedent and precedent of this court, specifically U.S. v. Antelope and U.S. v. LeMay under the equal protection issue. And then the Supreme Court case is Hutto, minors in this circuit. So unless there are any questions from the court, we believe that the precedents are controlled. You don't think Hutto's been superseded by Harmeline? No, Your Honor. You going? No. Okay. Thank you. Thank you. Your Honor, if I may, since I still have three minutes, if I could address a couple more issues. And it's just as much as you've stated. This is an uphill climb. But in regards to the Eighth Amendment analysis, it is stated that it's exceedingly rare that Congress's ability to put forth penalties should be looked at. But in a case such as like this, the Eighth Amendment still works. There has to be some way for the judicial branch to take a look at a sentence like this that we believe is grossly disproportionate and then go on through an interjurisdictional analysis. I think as though that this one-size-fits-all situation that the government just goes ahead and says that this is what happens, we don't take a look at any characteristics of the defendant, it almost is in contradiction of the sentencing pursuant to 18 U.S.C. 3553 when we're supposed to take a look at all sorts of other factors. So I would like the court to take a look at this, realize as though that this is an uphill climb. I am certainly conceding that. But this is one of these exceedingly rare cases. It is one more deference to me. You had suggested an opening argument that Hutto was somehow modified by Harmelin, if I understood you correctly. You said it was a pre-Harmelin case. Yes, it is. And you said it as a fact. And I guess as a chronological fact, it's true. I take it that you think that Harmelin somehow modifies Hutto. I think that Harmelin modifies the entire equal protection analysis. I know that, first of all, you go to a threshold on whether or not it's grossly disproportionate. I mean, that was certainly not the case. You don't mean equal protection in whom? Excuse me, the Eighth Amendment. My apologies. Yes. So I think as though that Harmelin sets out new rules that certainly were not in place when Hutto was decided. And that is also after Salm, as the cases go on and on. But, of course, as though that this more or less train wreck, I call it, as far as the Eighth Amendment goes, I mean, there's certainly different analysis that are given in at all times. This Court in Ramirez v. Castro in granting a habeas petition on Eighth Amendment grounds went through all sorts of things as far as Ramirez's past, his criminal history. The Court even talked about in the decision and how during oral argument there was people in the courtroom and how he had found spirituality. I don't think it's a right-line rule where you just take a look at the crime committed and also the sentence. I think as though that it is clear by precedent from the Supreme Court and also by this Court there is ways of getting into exactly what a mitigating circumstance is. And I think that that is clearly defined in this case. And it cannot be more aptly defined if you take a look at the guideline range compared to the sentence. Also, if you take a look at the history of Ramirez's act. If you were writing an opinion ruling in your favor. Hopefully. If you were. This is an exercise. If you were writing such an opinion, what would be the Supreme Court case you would use as the foundation for that ruling? For this. The most helpful and most sort of applicable to this situation. This violates cruel and unusual punishment. And we take our guidance from. And you tell us which it is. It's not Hutto, right? No, it's not Hutto. I think as though that this Court should take a look more at the factors of Ewing versus California. Where they, even though that they ruled that it was not unconstitutional and it was not a ban on cruel and unusual punishment. That is decided in 2001. That more factors can be looked at. And I think if you look at the more factors and you take a look at the defendant as a whole. You'll find it is not grossly disproportionate. As far as the equal protection. I do believe as though that this Court should take a look at how it's invidiously applicated in Yickel versus Hopkins way back in 1886 I believe gives guidance. Okay. Thank you. Please restore your dispensary. And we will now hear our last case on the calendar. Buckingham versus Northern Press Company.
judges: Kozinski, Fletcher, Rawlinson